**Katherine L. TAYLOR, Plaintiff,**

v.

**PHOENIXVILLE SCHOOL DISTRICT, Defendant.**

**No. CIV. A. 96–CV–8470.**

United States District Court, E.D. Pennsylvania.

Sept. 19, 2000.

Joseph A. Ryan, Ryan, Wochock & Ryan, Ltd., Paoli, PA, for Plaintiff.

Michael I. Levin, Michael W. Jones, Michael I. Levin & Assoc., PC, Huntingdon Valley, PA, for Defendant.

## MEMORANDUM

JOYNER, District Judge.

This is an employment discrimination case presently before the Court on remand from the United States Court of Appeals for the Third Circuit. Plaintiff Katherine L. Taylor ("Plaintiff" or "Taylor") brought this action against her former employer, Defendant Phoenixville School District ("Defendant" or "the School District"), on December 19, 1996. In her Complaint, Taylor claimed that the School District discriminated against her in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("the ADA") and the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* ("the PHRA"). The essence of Taylor's claims was that the School District failed to provide reasonable accommodations for her mental illness.

Defendant moved for summary judgment pursuant to Fed.R.Civ.P. 56 on September 17, 1997. On March 20, 1998, we granted Defendant's Motion for Summary Judgment in our opinion reported at 998 F.Supp. 561 (E.D.Pa.1998). Plaintiff appealed. On appeal, the Third Circuit reversed our order, concluding that Taylor's unmedicated condition demonstrated that she had a disability. In addition, the court found that genuine factual issues existed as to whether the School District participated in the interactive process required by the ADA. *See Taylor v. Phoenixville Sch. Dist.,* 174 F.3d 142 (3d Cir. Apr.5, 1999).

Shortly thereafter, Defendant petitioned for rehearing. The Third Circuit ultimately granted Defendant's petition and vacated its earlier opinion in light of the recent United States Supreme Court decisions in *Sutton v. United Airlines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) and *Murphy v. United Parcel Svc.,* 527 U.S. 516, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999). In *Sutton* and *Murphy,* the Supreme Court held that when a court evaluates whether a plaintiff has a disability

under 42 U.S.C. § 12102(A), it must take into account any mitigating measures the plaintiff uses. Based on these decisions, the Third Circuit on August 18, 1999 issued a new opinion, in which it applied the updated law.

In its August 1999 opinion, the Third Circuit again reversed the grant of summary judgment, concluding that genuine issues of fact existed as to whether Taylor continued to be substantially limited in a major life activity even while taking her medication. The court also restated its previous conclusions regarding the interactive process, which were unaffected by *Sutton* and *Murphy*. The case was then remanded to this Court for further proceedings. *Taylor v. Phoenixville School District*, 184 F.3d 296 (3d Cir.1999).

Upon remand, we granted the parties time to perform additional discovery. Having completed that additional discovery, Defendant now moves again for summary judgement on all counts. For the reasons that follow, we will grant Defendant's Motion in part and deny it in part.

## BACKGROUND

As both this Court and the Third Circuit have previously stated the facts of this case at length, we need not duplicate those efforts here. The essential facts of the case are as follows. Plaintiff was employed by Defendant as the principal's secretary for the East Pikeland Elementary School ("East Pikeland") from September 1974 until her termination on October 28, 1994. During her tenure as secretary, Plaintiff worked for several different principals, each of whom gave Plaintiff consistently positive work reviews. In August 1993, a new principal, Christine Menzel ("Menzel"), was assigned to East Pikeland. Unfortunately, after working with Menzel for only one week, Plaintiff became ill and was forced to take a leave of absence from work.

Plaintiff's leave of absence began on August 30, 1993. The next day she was admitted to the Coastal Plains Hospital and Counseling Center in North Carolina ("Coastal Plains") where she was diagnosed with bipolar disorder. While under care at Coastal Plains, Plaintiff was treated with the prescription drugs Navane and Lithium Carbonate. She remained hospitalized until September 20, 1993, at which time she was discharged to the care of Louise Sonnenberg, M.D. ("Dr. Sonnenberg"), a psychiatrist practicing in Phoenixville, Pennsylvania. Plaintiff currently remains under the care of Dr. Sonnenberg and continues to take Lithium.

With her doctor's permission, Plaintiff returned to work in mid-October 1993. Almost immediately upon her return, Plaintiff encountered difficulties performing her job. These problems were exacerbated by a number of changes in office procedure that had been implemented by Menzel during Plaintiff's absence. As a result of the problems, Menzel became dissatisfied with Plaintiff's performance, and the working relationship between the two women became strained. Over the next year, Menzel documented Plaintiff's errors in a series of disciplinary memoranda that culminated with Plaintiff being placed on probation for unsatisfactory performance on September 8, 1994. Finally, on October 28, 1994, Plaintiff was informed that she had failed to improve her performance during the probationary period and that she was being terminated from her position.

After Plaintiff's termination, her union representatives negotiated with the School District to allow her to "retire" in substitution for her discharge, thereby allowing her to receive retirement benefits. Several months later, Plaintiff filed this action.

## DISCUSSION

### I. *Legal Standard*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing the basis for its motion for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party meets this burden pursuant to Fed.R.Civ.P. 56(c), the burden shifts to the non-moving party to go beyond mere pleadings and to demonstrate, through affidavits, depositions or admissions, that a genuine issue exists for trial. *Id.* at 324, 106 S.Ct. 2548. In so doing, the non-moving party must raise "more than a mere scintilla of evidence in its favor" and may not merely rely on unsupported assertions, conclusory allegations, or mere suspicions. *Willmore v. American Atelier, Inc.*, 72 F.Supp.2d 526, 527 (E.D.Pa.1999) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

Put simply, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251–52, 106 S.Ct. 2505. When the non-moving party fails to create such disagreement, "[t]he moving party is 'entitled to a judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

## II. *The ADA*

■ The ADA prohibits discrimination against qualified people with disabilities. To create a prima facie case under the ADA, a plaintiff must "establish that he or she (1) has a disability (2) is a qualified individual and (3) has suffered an adverse

employment action because of that disability." *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 142 (3d Cir.1998) (citing *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir.1998)). Because there is no legitimate dispute in this case that Taylor suffered an adverse employment action, we limit our analysis to the first two elements of the prima facie case.

### A. *Disability*

The ADA defines a disability as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g)(1999).[1] Plaintiff argues that she satisfies all three prongs of this definition. We address each in turn.

#### 1. *Substantial limitation of a major life activity*

■ First, Taylor argues that her condition is an "actual disability," that is, a physical or mental impairment that substantially limits her in a major life activity. It is undisputed that Taylor's bipolar disorder qualifies as an impairment under the ADA; the question is whether that disorder substantially limits a major life activity.

Defendant argues that, despite Taylor's impairment, she is not substantially limited in any major life activity. In doing so, Defendant reiterates many of the arguments it made to this Court in its first summary judgment motion. In addition, Defendant now claims that the Supreme Court's decision in *Sutton* mandates summary judgment on this issue. As noted above, the Supreme Court in *Sutton* held that courts must take into account any mitigating measures used by a plaintiff when determining if that plaintiff is dis-

---

1. "Because the ADA does not define many of the pertinent terms, we are guided by the Regulations issued by the Equal Employment Opportunity Commission ('EEOC') to imple-

ment Title I of the Act." *Deane*, 142 F.3d at 143 n. 4 (citing 42 U.S.C. § 12102(2) and 29 C.F.R. § 1630.2).

abled under the ADA. *See Sutton,* 119 S.Ct. at 2147–49. In view of that holding, Defendant argues that there is no evidence that Taylor was substantially limited in any major life activity while taking Lithium.

Defendant's argument need not detain us long. In its August 18, 1999 opinion, the Third Circuit evaluated Defendant's argument in light of the Supreme Court's announcements in *Sutton* and *Murphy.* The Third Circuit began by accepting Plaintiff's argument that "thinking" could be a major life activity. *Taylor,* 184 F.3d at 307 ("We accept that thinking is a major life activity."); *see generally* 29 C.F.R. § 1630.2(i) & App. (describing characteristics of major life activities). Then, applying the new analytical framework of *Sutton,* the court concluded that: "[Taylor] has presented sufficient evidence to require a trial on whether she continued to be substantially limited even while receiving treatment." *Taylor,* 184 F.3d at 309; *see generally* 29 C.F.R. § 1630.2(j) (defining "substantially limited"). The Third Circuit's findings on these issues are clear, and we remain bound by their holding.

We recognize that, since the Third Circuit's decision, Defendant has engaged in further discovery on this issue, including deposing Plaintiff, her son, and several physicians. This intervening discovery, however, does not change the fundamental nature of this case, nor does it render the Third Circuit's findings inapposite. Taken in the light most favorable to Taylor, we find that there are still genuine issues of material fact as to whether Taylor is substantially limited in any major life activities even while receiving treatment. Accordingly, Defendant's Motion will be denied with respect claims premised on actual disability.

**2.** The EEOC guidelines further state: "This part of the definition is satisfied if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment. The impairment indicated

### 2. *Record of Impairment*

Next, we consider whether Taylor is disabled under the ADA by virtue of having a "record of impairment." *See* 42 U.S.C. § 12102(2)(B). To meet this definition, an individual must have a history of, or been misclassified as having, an impairment that substantially limited a major life activity. 29 C.F.R. § 1630.2(k).[2]

Taylor blends her "record of impairment" claim and her "regarded as" claim together into a single argument. In doing so, she fails to offer any specific evidence that she has a record of an impairment that substantially limits a major life activity. To the contrary, her argument, and the evidence in support of that argument, appear to apply solely to whether Defendant regarded her as disabled. As described *infra,* "regarded as" disability is a distinct way to establish a disability under the ADA, and we will consider Taylor's evidence in support of that claim in turn. However, for purposes of meeting the definition of a disability by virtue of a "record of impairment," Taylor has failed to provide sufficient evidence to support her claim. To the extent a record of an impairment exists at all, nothing in that record suggests that the impairment substantially limited a major life activity. Such a showing is insufficient to establish disability based upon a record of impairment. *See* 29 C.F.R.App. § 1630.2(k); *see also Sorensen v. University of Utah Hosp.,* 194 F.3d 1084, 1087 (10th Cir.1999) (noting that, to demonstrate record of impairment, impairment must substantially limit a major life activity); *Howell v. Sam's Club # 8160/Wal–Mart,* 959 F.Supp. 260, 268 (E.D.Pa.1997) (same), *aff'd,* 141 F.3d 1153 (3d Cir.1998). As a result, we will grant Defendant's Motion with respect to claims premised on "record of impairment" disability.

in the record must be an impairment that would substantially limit one or more of the individual's major life activities." 29 C.F.R.App. § 1630.2(k).

### 3. *Regarded as Disabled*

Finally, we examine whether Plaintiff has established a disability by virtue of having been "regarded as" disabled. *See* 42 U.S.C. § 12102(2)(C). Under the ADA, a person is regarded as having a disability if the person:

> (1) has a physical or mental impairment that does not substantially limit major life activities but is treated by the covered entity as constituting such limitation;
>
> (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
>
> (3) has [no such impairment] but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(1).

■ In the instant case, we find that there is adequate evidence for Plaintiff to withstand summary judgment on her "regarded as" claim. Genuine issues of material fact exist concerning the School District's initial notice of Taylor's ailment, its understanding of Taylor's medical condition when she returned to work, and its later conduct toward Taylor based on that understanding. Viewing these facts in the light most favorable to Taylor, we find that a reasonable jury may be able to conclude that the School District regarded Taylor as disabled when she was discharged. *See, e.g., Deane,* 142 F.3d at 145 (holding that summary judgment inappropriate where factual disputes exist over degree of impairment compared with perception thereof); *see also Taylor v. Pathmark Stores, Inc.,* 177 F.3d 180, 191 (3d Cir.1999) (noting that "regarded as" plaintiff can make out a claim even if employer is innocently wrong about extent of impairment). Accordingly, we will deny Defendant's Motion with respect to claims based upon regarded as disability.

### B. *Qualified Individual*

■ Having found that factual disputes exist over whether Taylor is disabled under the ADA, we must now examine the second element of the prima facie case: whether Taylor is a "qualified individual." The ADA defines a qualified individual as one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The applicable regulations divide this inquiry into two prongs: (1) whether the individual has the requisite skill, experience, education and other job requirements of the position and (2) whether the individual, with or without reasonable accommodation can perform the essential functions of the position. *See* 29 C.F.R.App. § 1630.2(m). No question exists about whether Taylor satisfies the prerequisites of her position. Rather, the dispute centers on whether Taylor could, with reasonable accommodations, perform the essential functions of her job after returning from her hospitalization.

In examining this issue, the Third Circuit focused its analysis on the interactive process engaged in by Taylor and the School District. The ADA's regulations state that:

> To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the [employee] in need of accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

29 C.F.R. § 1630.2(*o*)(3). The Third Circuit analyzed the interactive process in two steps: first, whether sufficient notice was given to the School District to trigger its obligations under the interactive process, and second, whether the School District fulfilled its duties once the interactive process was initiated. *Taylor,* 184 F.3d at 312–13. Addressing these two inquires, the court found that sufficient notice was given to the School District to trigger the interactive process and that the School District later failed to fulfill its duties in

that process. Based on that finding, the court concluded that "a reasonable jury could conclude, based on the evidence presented thus far, that the school district did not meet its burden under the interactive process." *Id.* at 315. The court further stated that "a reasonable jury could conclude that the school district did not engage in an interactive process of seeking accommodations and is responsible for the breakdown in the process." *Id.*

In its current motion, Defendant argues again that it neither had notice of Plaintiff's need for accommodation, nor failed to engage in the interactive process. However, as noted above, the Third Circuit has already determined that factual disputes exist with respect to those issues. Moreover, nothing in the subsequent discovery

resolves any of the factual disputes surrounding the interactive process. As a result, summary judgment is inappropriate, and we will deny Defendant's Motion with respect to this issue.

In sum, we find that Plaintiff has produced sufficient evidence that she (1) has a disability by virtue of being "actually disabled" or having been "regarded as" disabled; (2) is a qualified individual; and (3) has suffered an adverse employment action. Accordingly, Plaintiff has made out a prima facie case on her failure to accommodate claim.[3]

### III. *Punitive Damages*

Finally, Defendant argues that Plaintiff's request for punitive damages cannot, as a matter of law, be granted. We agree.

---

**3.** We note that by making out her prima facie case, Plaintiff has done all that is required to withstand summary judgment. There appears to be some confusion among the parties about the applicability of the burden-shifting test first announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The *McDonnell Douglas* test "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory treatment cases." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). In such cases, *McDonnell Douglas* allows a plaintiff to show discrimination through indirect evidence in a now-familiar three-step process. First, the plaintiff must establish a prima facie case of discrimination. Second, if the plaintiff succeeds, a presumption of discrimination is created that the employer must then rebut by stating a legitimate non-discriminatory reason for the adverse employment action. Third, if a legitimate non-discriminatory reason is provided, the plaintiff has the chance to show that the stated reasons were not the true reasons for the dismissal, but were a mere pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 802–04, 93 S.Ct. 1817. This burden-shifting test was first announced in a Title VII racial discrimination case, but has since been utilized in a variety of contexts, including under the ADA. *See Walton v. Mental Health Ass'n of Southeastern Pa.*, 168 F.3d 661, 667–68 (3d Cir.1999); *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500–01 (3d Cir.1997).

Although the *McDonnell Douglas* burden-shifting test can apply to certain ADA claims, it does not apply to all claims under the Act. There are two distinct types of claims under the ADA—disparate treatment claims and failure to accommodate claims. In the former type of claim, a plaintiff without direct proof of discrimination may use the *McDonnell Douglas* test to meet his burden indirectly. In the latter type of claim, however, the *McDonnell Douglas* test does not apply. If a plaintiff alleges facts that, if proven, would show that an employer should have reasonably accommodated an employee's disability and failed to, the employer has discriminated against him. There is no need for indirect proof or burden-shifting. *See Bultemeyer v. Fort Wayne Community Schs.*, 100 F.3d 1281, 1283–84 (7th Cir.1996); *Walton v. Mental Health Ass'n of Southeastern Pa.*, No. Civ. A. 96–5682, 1997 WL 717053, at *10 (E.D.Pa. Nov.17, 1997), *aff'd*, 168 F.3d 661 (3d Cir. 1999); *Brown v. Lankenau Hospital*, No. Civ. A. 95–7829, 1997 WL 277354, at *8 n. 9 (E.D.Pa. May 19, 1997).

In our first opinion, we observed that it was difficult to ascertain from the pleadings and briefs whether Plaintiff was raising a disparate treatment or failure to accommodate claim. Because of this lack of clarity, we chose to analyze both types of claims. *See Taylor*, 998 F.Supp. at 565. On her appeal, however, Plaintiff represented that she only intended to bring a failure to accommodate claim. *See Taylor*, 184 F.3d at 320 n. 11. As a result, no disparate treatment claim exists in this case, and we need not perform the *McDonnell Douglas* analysis.

■ It is clear that punitive damages under the ADA are not available against a municipality. 42 U.S.C. §§ 1981a(a)(2), (b)(1). *See also City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 267–71, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (holding that punitive damages not available against municipalities in case brought under 42 U.S.C. § 1983), *Bolden v. Southeastern Pa. Transp. Auth.*, 953 F.2d 807, 811 (3d Cir.1991) (holding that punitive damages not available against SEPTA in case brought under 42 U.S.C. § 1983); *Waring v. City of Philadelphia*, Civ. A. No. 96–1805, 1996 WL 208348, at *3 (E.D.Pa. Apr. 26, 1996) (stating that, under the ADA, "it is clear that a party may not seek punitive damages from a municipal entity."). Similarly, punitive damages under the PHRA are not available against municipalities. *Hoy v. Angelone*, 554 Pa. 134, 720 A.2d 745, 751 (1998) ("we hold that punitive damages are not available under the [PHRA]."); *see also Feingold v. Southeastern Pa. Transp. Auth.* 512 Pa. 567, 517 A.2d 1270, 1276–77 (1986) (concluding that it would be "inappropriate to assess punitive damages against SEPTA given its status as Commonwealth agency."). In this case, it is undisputed that the School District is a municipal entity. As a result, punitive damages are not, as a matter of law, available against the School District. *See* § 1981a(a)(2); *Newport*, 453 U.S. at 270, 101 S.Ct. 2748; *Hoy*, 720 A.2d at 751. Accordingly, we will grant Defendant's motion on the issue of punitive damages.[4]

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment will be granted in part and denied in part. Defendant's Motion will be granted with respect to claims premised upon "record of impairment" disability and with respect to punitive damages. Defendant's Motion will be denied in all other respects. An appropriate order follows.

## ORDER

AND NOW, this 19th day of September, 2000, upon consideration of Defendant's Motion for Summary Judgment, and the replies thereto, it is hereby ORDERED that Defendant's Motion is GRANTED in part and DENIED in part.

Defendant's Motion is GRANTED with respect to claims premised on 42 U.S.C. § 12102(2)(B) ("record of impairment") and on the issue of punitive damages. Defendant's Motion is DENIED in all other respects.

---

4. Plaintiff cites *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) and *Keenan v. City of Philadelphia*, 983 F.2d 459 (3d Cir.1992) for the proposition that punitive damages under the ADA are available against state actors. Plaintiff badly misreads the law. *Smith* involved an action brought against a prison guard in his *individual* capacity. Indeed, the Supreme Court in *Smith* recognized its prior holding in *Newport* that municipali-

ties are immune from punitive damages. *Smith*, 461 U.S. at 36 n. 5, 103 S.Ct. 1625. Similarly, *Keenan* involved the assessment of punitive damages not against the City, but against police officers as *individuals*—a distinction that the Third Circuit explicitly stated in its opinion. *Keenan*, at 463–64 n. 3 ("As we discuss *infra*, juries cannot impose punitive damages against directly [sic] municipalities under 42 U.S.C. § 1983.").