**Joyce B. FERRERI, Plaintiff,**

v.

**MAC MOTORS, INC., Defendant.**

**No. CIV. A. 99–5252.**

United States District Court,
E.D. Pennsylvania.

April 11, 2001.

Mark S. Scheffer, Gerald Ja Pomerantz, Pomerantz & Scheffer, Philadelphia, PA, for Plaintiff.

Jacqueline M. Woolley, Catherine T. Barbieri, Fox, Rothschild, O'Brien &

Frankel, LLP, Philadelphia, PA, for Defendant.

### *MEMORANDUM*

JOYNER, District Judge.

This is an employment discrimination case brought by Plaintiff Joyce B. Ferreri ("Plaintiff") against her former employer, Defendant Mac Motors, Inc. ("Defendant"). In her Complaint, Plaintiff alleges that Defendant's termination of her employment violated the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); the Age Discrimination in Employment Act, 42 U.S.C. § 623, *et seq.* ("ADEA"); and the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* ("PHRA"). In addition, Plaintiff alleges that Defendant committed a breach of contract and violated the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1, *et seq.* ("WPCL"). Defendant now moves for summary judgment. For the reasons below, we will grant Defendant's Motion on the federal law claims and decline to exercise supplemental jurisdiction over the remaining state law claims.

### BACKGROUND

The facts of this case are straight-forward. Defendant is an auto-parts company. In 1985, Plaintiff was hired by Defendant to work as a telemarketer, a position she held until she was terminated in 1998. The stated reason for Plaintiff's termination was "excessive absence." (Def.Ex. O).

Plaintiff forthrightly admits that throughout her 13 year employment with Mac Motors, she had difficulty arriving to work on time. (Pl.Dep. at 65, 120–22). Plaintiff blames "99%" of her late arrivals on traffic congestion. (*Id.* at 120). She further states that, despite the obvious and consistent traffic problems she encountered, she was never able to figure out a way to get to work on time while in Defendant's employ. (*Id.* at 121–22).

Mac Motors did not have an official, written attendance policy in place for the first several years of Plaintiff's employment. As a result, on the occasions that Plaintiff was late, she would be informally confronted by her supervisor and reminded of the need to be to work on time. Unfortunately, these informal efforts were unsuccessful, and Plaintiff's tardiness began to worsen in late 1994 and 1995. As a result, Plaintiff's current manager, Mark Boruta ("Boruta"), issued her a written notice on December 28, 1995 regarding the excessive "amount of time that [she was] missing from work." (Def.Ex. C). After Plaintiff's tardiness did not improve, Boruta and William Boyk ("Boyk"), President of Mac Motors, met with her in February 1996 to re-emphasize the importance of arriving to work on time. (Pl. Dep at 199–200; Boyk Dep. at 43). Several months later, after still no improvement in Plaintiff's punctuality, Boyk and Boruta removed Plaintiff from several of her sales accounts because of her continual lateness. (Def.Ex. E). Despite that action, Plaintiff continued to struggle getting to work on time and, after being late for a company meeting in August 1996, she was suspended for two days. (Def.Ex. G).

Near the same time Plaintiff's tardiness problem worsened in 1995, she began receiving treatment for migraine headaches. (Castillo Dep. at 25). Plaintiff's physician treated her with several medications, including an injectable form of the prescription drug Imitrex. (*Id.* at 117–18). Plaintiff stated that she discussed her migraines, and the medicine she took to alleviate them, with Boruta. (Pl.Dep. at

387–88). According to Plaintiff, she requested that on mornings when she had an acute migraine attack, she be permitted to come into work late. Plaintiff claims that Boruta responded that she should simply take an entire day off if she had a migraine. (*Id.*).

In March 1998, Mac Motors instituted a formal, written attendance policy and distributed it to all employees. The policy regarding tardiness stated:

### TARDINESS

Definition: An employee will be considered to be tardy if he punches the time clock more than 5 minutes after his scheduled start time, or if he is more than 5 minutes late punching in after lunch break.

If an employee is late 3 times in a 30 day period he or she will be issued a verbal warning. If the employee is late 1 more time within the next 30 days after the verbal warning he will be issued a written reprimand. If he is late again within 30 days after the written reprimand he will be suspended for 1 day without pay. If he is late again within 30 days after the one day suspension he will receive a 3 day suspension. If he is late again within 30 days of the 3 day suspension he will (at the discretion of the management) be subject to termination of his employment with Mac Motors.

(Def.Ex. H).

Plaintiff was more than five minutes late to work on March 6, 18, and 31, 1998, for which she received a verbal warning pursuant to the new policy. (Def.Ex. I, J). Plaintiff was late again on April 17, 1998 and, consequently, received a written reprimand on April 24, 1998. (*Id.*). Shortly thereafter, Plaintiff was late yet again, which resulted in her receiving a one-day suspension on May 4, 1998. (Def.Ex. J.). Within several weeks, Plaintiff arrived late for work again, this time resulting in a three-day suspension as of June 9, 1998. (Def.Ex. K). Unfortunately, Plaintiff's tardiness problem still did not improve; she was late on at least another five occasions between July 1998 and September 1998. After the last set of incidents, Plaintiff received a second three-day suspension on September 11, 1998. (Def.Ex. L). Plaintiff protested the discipline in writing, but nevertheless served out her suspension and returned to work on September 17, 1998.

Upon Plaintiff's return to work, Boruta sent her a memorandum that formally responded to her earlier protests about the suspension. The September 20, 1998 memorandum rejected Plaintiff's arguments and restated the need for her to arrive to work on time. (Def.Ex. M). After receiving Boruta's memorandum, Plaintiff called out sick from work the next two days, September 21 and 22, 1998, and then called off work twice more over the next two weeks. Plaintiff asserts that on each occasion she had a migraine headache and, therefore, called off work per Boruta's previous instructions. (Pl.Dep. at 387–88; Pl.Resp. at 4–5). Notwithstanding that explanation, when Plaintiff returned to work on October 5, 1998, Boruta issued her a letter terminating her employment because of excessive absences. (Def.Ex. O).

Plaintiff dual-filed a charge of discrimination with the Pennsylvania Human Relations Commission and the Equal Employment Opportunity Commission on December 4, 1998, and subsequently received her right to sue notice. She instituted the instant action on October 22, 1999.

## DISCUSSION

### I. *Legal Standard*

In deciding a motion for summary judgment under Fed.R.Civ.P. 56(c), a court

must determine "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgement as a matter of law." *Medical Protective Co. v. Watkins,* 198 F.3d 100, 103 (3d Cir.1999) (internal citation omitted). When making this determination, courts should view the facts, and reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). For its part, the non-moving party must, through affidavits, admissions, depositions, or other evidence, demonstrate that a genuine issue exists for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In making its showing, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *id.* at 586, 106 S.Ct. 1348, and must produce more than a "mere scintilla of evidence in its favor" to withstand summary judgement. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the non-moving party fails to create "sufficient disagreement to require submission [of the evidence] to a jury," the moving party is entitled to judgement as a matter of law. *Liberty Lobby,* 477 U.S. at 251–52, 106 S.Ct. 2505.

## II. *Employment Discrimination Burden Shifting Analysis*

In the absence of direct or overt evidence of a decision-maker's discriminatory bias, courts apply the familiar burden shifting framework announced in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to discrimination claims under Title VII, the ADEA, and the ADA. *See, e.g., Newman v. GHS Osteopathic, Inc.,* 60 F.3d 153, 156–58 (3d Cir.1995) (noting that

*McDonnell Douglas* analysis equally applicable to claims under ADA, ADEA, and Title VII). In *McDonnell Douglas,* the Supreme Court "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory treatment cases." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The test consists of three steps: First, the plaintiff must establish a prima facie case of discrimination. Second, once the prima facie case is established, the defendant must state a legitimate, non-discriminatory reason for the adverse employment action. Finally, if a legitimate, non-discriminatory reason is offered, the plaintiff must come forward to show that the stated reason is not the true one, but only a pretext for discrimination. *See McDonnell Douglas,* 411 U.S. at 802–04, 93 S.Ct. 1817.

There are two ways a plaintiff can demonstrate pretext. The plaintiff must point "to some evidence, direct or circumstantial, from which a fact-finder would reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Jones v. Sch. Dist. of Philadelphia,* 198 F.3d 403, 413 (3d Cir. 1999) (quoting *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir.1994) and *Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061, 1067 (3d Cir.1996) (en banc)). The first prong of the *Fuentes* test requires a plaintiff to show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." *Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1108–09 (3d Cir.1997). That show-

ing requires more than just evidence that the employer's decision was wrong or misguided. *See id.* (noting that factual dispute at issue is "whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent."). In other words, to succeed the plaintiff must demonstrate that "the employer's articulated reason was not merely wrong, but that it was 'so plainly wrong that it cannot have been the employer's real reason.'" *Jones,* 198 F.3d at 413 (quoting *Keller,* 130 F.3d at 1109).

■ Under the second prong of the *Fuentes* test, a plaintiff can withstand summary judgment by showing that discrimination was more likely than not the motivation behind the adverse employment action. *See id.* There are a number of ways by which this burden can be met, including by showing "that the employer previously discriminated against [the plaintiff], that the employer has previously discriminated against other persons within the plaintiff's protected class, or that the employer has treated more favorably similarly situated persons not within the protected class." *Id.* (quoting *Simpson v.*

*Kay Jewelers,* 142 F.3d 639, 645 (3d Cir. 1998)). We apply the foregoing principles to Plaintiff's various claims below.

### III. *Title VII and ADEA claims*

■ Plaintiff does not address her sex and age discrimination claims in her Response. To the extent that Plaintiff has not conceded these claims, they clearly must fail. Assuming that Plaintiff has made out a prima facie case, Defendant has met its burden by offering a legitimate, non-discriminatory reason for firing Plaintiff. Plaintiff, however, has not offered any evidence that would even suggest that Defendant's proffered reason for her termination—her admittedly consistent pattern of tardiness over multiple years—was pretext for age or sex discrimination. Because Plaintiff obviously cannot fulfill either prong of the *Fuentes* test, we will grant Defendant's Motion with respect to the Title VII and ADEA claims.

### IV. *ADA claim*

■ Plaintiff's brief Response to Defendant's Motion is devoted entirely to her ADA claim.[1] Once again, even assuming

---

1. Plaintiff has not clearly stated what type of claim she is attempting to bring under the ADA. As a result, we first must determine whether Plaintiff's ADA claim is a disparate treatment or failure to accommodate claim. The difference is significant because it affects the mode of analysis. In a disparate treatment claim, a plaintiff without direct proof of discrimination utilizes the *McDonnell Douglas* burden shifting test to meet his burden indirectly. In a failure to accommodate claim, however, the *McDonnell Douglas* test does not apply. Once a plaintiff alleges facts that, if proven, would show that an employer should have reasonably accommodated an employee's disability and failed to, the employer has discriminated against the employee. *See Bultemeyer v. Fort Wayne Community Schs.,* 100 F.3d 1281, 1283–84 (7th Cir.1996); *Taylor v. Phoenixville Sch. Dist.,* 113 F.Supp.2d 770, 776 n. 3 (E.D.Pa.2000).

Here, it appears that Plaintiff is presenting a disparate treatment claim. Plaintiff devotes most of her Response to arguing that Defendant's reason for her termination was pretext. (*See* Pl. Resp. at 2–4). Specifically, Plaintiff attempts to throw doubt upon her employer's reason by arguing (1) the distinction between tardiness and absences and (2) Boruta's alleged instruction for Plaintiff not to report to work if she had a migraine. In addition, Plaintiff alleges that she "was treated differently than similarly situated employees of defendant on account of her ... disability," and that "disability ... was a motivating factor" in her termination. (Am. Compl. at ¶¶ 13, 17). Thus, Plaintiff frames her ADA claim as one involving disparate treatment; as a result, we will apply the *McDonnell Douglas* analysis to her claim.

We observe that Plaintiff does include some references to Defendant's failure to accommo-

she has made out a prima facie ADA claim, Plaintiff has completely failed to show any pretext. Plaintiff claims that Defendant's reason for her discrimination is "subject to doubt" for two reasons. First, she claims that her prior warnings and suspensions were for *tardiness* as opposed to *absences*. Second, she alleges that she did not come to work on the days directly preceding her termination because Boruta had previously instructed her to call in sick if she had a migraine. Accepting both claims as true, Plaintiff still falls well short of meeting her burden at summary judgment.

Plaintiff does not point to any evidence that could lead a fact-finder to disbelieve Defendant's proffered reason for her termination or believe that discrimination was more likely than not a motivating factor in her termination. *See Jones,* 198 F.3d at 413. Plaintiff's argument regarding the tardiness-absence distinction and Boruta's alleged instructions turns a blind eye to the long, documented, and undisputed record of Plaintiff's lateness to work. There is nothing in the record before us indicating any inconsistencies or weaknesses in Defendant's reasons for Plaintiff's dismissal. Nor is there any evidence showing that Defendant previously discriminated against Plaintiff or any similarly situated employee. Quite the contrary, the record reflects an exceptional degree of patience on the part of an employer in dealing with a chronically late and irresponsible employee. At very most, Plaintiff has raised a dispute over the wisdom of Defendant's decision to terminate her. Such a dispute, however, does not establish pretext and cannot save Plaintiff from summary judgment. *See, e.g., Keller,* 130 F.3d at 1108–

09 (explaining that factual issue is not whether decision was wise or prudent, but whether it was motivated by discriminatory animus); *Hicks v. Arthur,* 878 F.Supp. 737, 739 (E.D.Pa.1995) (stating that "an ill-formed decision or an ill-considered decision is not automatically pretextual if the employer gave an honest answer for termination."). Accordingly, we will grant Defendant's Motion with respect to Plaintiff's ADA claim.

## V. *State claims*

Because we will dismiss all of the federal claims against Defendant, we must decide whether to exercise supplemental jurisdiction over Plaintiff's PHRA, WPCL, and breach of contract claims. A court "may decline to exercise supplemental jurisdiction [over state law claims] if ... the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). We decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. If she so chooses, Plaintiff may refile her state claims in the appropriate state court.

## CONCLUSION

An appropriate order follows.

## *ORDER*

AND NOW, this day of April, 2001, upon consideration of Defendant's Motion for Summary Judgment (Document No. 18), and Plaintiff's Response thereto, it is hereby ORDERED that:

date her in her Amended Complaint and Response. However, even if Plaintiff were attempting to bring a failure to accommodate claim, it is clear on the face of the record before us that Plaintiff has not addressed the necessary elements of a prima facie failure to

accommodate claim, much less met her burden at summary judgment with respect to same. *See, e.g., Gaul v. Lucent Techs., Inc.,* 134 F.3d 576, 580 (3d Cir.1998) (stating prima facie case for failure to accommodate claim).

(1) Defendant's Motion is GRANTED with respect to the ADA, ADEA, and Title VII claims; and

(2) Plaintiff's remaining state law claims are DISMISSED WITHOUT PREJUDICE.