**Alvis BROWN, Plaintiff,**

v.

**BALDWIN UNION FREE SCHOOL DISTRICT and Baldwin Union Free School District Board of Education, Defendants.**

**No. 06–CV–81 (RMM)(ETB).**

United States District Court,
E.D. New York.

March 20, 2009.

Thomas F. Liotti, Law Offices of Thomas F. Liotti, Garden City, NY, for Plaintiff.

Jennifer H. Pymm, Rutherford & Christie LLP, New York, NY, for Defendants.

## MEMORANDUM AND ORDER

MAUSKOPF, District Judge.

Plaintiff Alvis Brown ("Plaintiff") commenced this action against Defendants Baldwin Union Free School District and Baldwin Union Free School District Board of Education (together, "Defendants"), asserting claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.;* 42 U.S.C. § 1981 (" § 1981"); and the Fourteenth Amendment to the United States Constitution. Plaintiff, who is African–American and whom Defendants employed as one of the two Deans of Students of the Baldwin Middle School from September 2002 through June 2004, alleges that Defendants' decisions (1) not to hire Plaintiff as Assistant Principal of the Baldwin Middle School in 2002, and (2) to terminate Plaintiff's employment in 2004, were motivated by discriminatory animus based on Plaintiff's race.

Currently before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Defendants' motion is GRANTED in part and DENIED in part. The motion is GRANTED as to Plaintiff's Fourteenth Amendment claim and his request for punitive damages, and DENIED as to Plaintiff's Title VII and § 1981 claims.

## BACKGROUND

The following facts are either undisputed or set forth in the light most favorable to Plaintiff, the non-moving party.[1] In

---

1. The Court notes that Plaintiff failed to comply fully with Local Rule 56.1 in responding to Defendants' statement of undisputed facts.

March 2002, Plaintiff applied for the position of Assistant Principal of the Baldwin Middle School. Plaintiff underwent three interviews for the position. The first two involved James Brown, the school's Principal; Arlene Guerrero, one of the school's Assistant Principals; and Howard Landman, the retiring Assistant Principal. The final interview was conducted by a committee that included administrators, department heads, parent representatives, support staff, nurses, and students. Principal Brown was present for all three interviews.

According to Plaintiff, a few days after his third and final interview, Principal Brown called Plaintiff and told him was not selected for the Assistant Principal position. Principal Brown told Plaintiff that although he was Principal Brown's choice for the job, the school was "going in another direction" because Principal Brown and Assistant Principal Guerrero were African–American and African–Hispanic, respectively, and the District was "not ready" for the three top administrative positions at the Middle School to be occupied by African–Americans.

Plaintiff alleges that, after delivering that news, Principal Brown told Plaintiff that he still wanted Plaintiff on his team, that there was another position available at the school (Dean of Students), and that Plaintiff should submit a writing sample the following day in order to be considered for that position. After Plaintiff submitted his writing sample, he was scheduled to meet with school Superintendent Kathy Weiss. During their meeting, according to Plaintiff's account, Superintendent Weiss told Plaintiff that, despite her reservations concerning his speech and diction, she would "take a chance" on him. The District subsequently hired Plaintiff as Dean

of Students and hired Linda Anthony, a white female, for the Assistant Principal position. Plaintiff began his employment as Dean of Students in September 2002. Around the same time, the District hired Cheryl Farb, a white female, also to serve as a Dean of Students.

In his affidavit and during his deposition, Plaintiff recounted numerous conversations with Principal Brown concerning the role that race played in certain hiring decisions at the school. For example, Plaintiff alleges that Principal Brown told him, on "several occasions," that Farb and Plaintiff had been hired as the two Deans of Students because Superintendent Weiss wanted to have "one African American Dean of Students and one Caucasian Dean of Students." Plaintiff also claims that, sometime in late 2002, Principal Brown spoke to him regarding difficulties he was having with Assistant Principal Anthony (the person hired instead of Plaintiff). Plaintiff attributes the following statement to Principal Brown:

> I should have just went [sic] with my first thought and bucked the situation and put you in the place of the Assistant Principal. I was directed to go this route. This district and this town would not go for three black administrators running the middle school. I was steered to find a black dean and a white dean, preferably a male and a female.

Plaintiff further alleges that, during the spring of 2003, Principal Brown again told Plaintiff "that [Superintendent] Weiss intentionally hired one African–American dean of students and one Caucasian dean of students in order to adhere to the racial make up [sic] of the community of Baldwin...."

Although Plaintiff's omission does not change the Court's analysis or conclusion in this case, Plaintiff's counsel is reminded of his responsibility to abide by the Local Rules of the Eastern District of New York.

Plaintiff alleges that, during a dinner meeting on approximately February 10, 2004, Principal Brown made additional comments concerning race and Plaintiff's employment with the School District. Plaintiff claims that Principal Brown told him he needed to be "twice as good as Dean Farb and the other white administrators." Plaintiff also claims that, during the same meeting, Principal Brown advised Plaintiff to "get off CPT time" (understood to mean "Colored People's Time"), start arriving at work earlier, and "step up [his] game."

In addition to the foregoing, Plaintiff, in his Complaint, affidavit, and deposition testimony, recounts numerous instances of conflict among the school district's administrators, many involving Plaintiff. According to Plaintiff, by the summer of 2004, Plaintiff's relationships with his fellow administrators, including Principal Brown, had become extremely strained. Plaintiff claims that, in June 2004, Principal Brown told him "that the superintendent wanted [Plaintiff] to resign quietly or else be fired." At the end of that month, Plaintiff was informed that his employment would be terminated at the end of the school year. Plaintiff commenced this action in January 2006.

## APPLICABLE LAW

### A. *Summary judgment standard*

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*

*v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether a genuine issue of material fact exists, the evidence of the nonmovant "is to be believed" and the court must draw all "justifiable" or "reasonable" inferences in favor of the nonmoving party. *Id.* at 255, 106 S.Ct. 2505 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)); *Brosseau v. Haugen,* 543 U.S. 194, 195 n. 1, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial,*'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in original), and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998) (citing cases). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming,* 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993) (quoting *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548) (internal quotation marks omitted) (alteration in original). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo,* 100 F.3d 253, 258 (2d Cir.1996) (citing

*Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505).

## B. *Title VII standard*

■■■ The Second Circuit has emphasized "the need for caution about granting summary judgment to an employer in a discrimination case where ... the merits turn on a dispute as to the employer's intent." *Holcomb v. Iona Coll.,* 521 F.3d 130 (2d Cir.2008) (citations omitted). District courts must remain mindful that, when an employer has acted with discriminatory intent, direct evidence of that intent will only rarely be available, so that "affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir. 1994). Even in discrimination cases, however, a plaintiff must provide more than conclusory allegations to defeat a motion for summary judgment, *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985), as "[s]ummary judgment remains available for the dismissal of claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.,* 109 F.3d 130, 135 (2d Cir. 1997).

Both Plaintiff and Defendants have argued the instant motion according to the framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[2] Under the *McDonnell Douglas* "burden-shifting" inquiry, in the absence of direct evidence of employment discrimination, a plaintiff must first establish a *prima facie* case of discrimination by demonstrating that: (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he was discharged; and (4) his discharge occurred under circumstances giving rise to an inference of discrimination. *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 567 (2d Cir.2000). This burden is minimal and does not require specific evidence of discrimination. *Joseph v. Leavitt,* 465 F.3d 87, 90 (2d Cir.2006). If a plaintiff meets this burden, the defendant employer must then articulate a "legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. A plaintiff must then provide evidence that the employer's explanation is not true but a pretext for discrimination. *Slattery v. Swiss Reinsurance Am. Corp.,* 248 F.3d 87, 91 (2d Cir.2001).

■■■ The ultimate burden to persuade the trier of fact "that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). It is not enough for a plaintiff

**2.** Although Plaintiff has not raised the issue, it is not clear to the Court that *McDonnell Douglas* is the proper framework within which to analyze Plaintiff's failure to hire claim. As the Second Circuit has held, "[i]n cases where a plaintiff can present direct evidence of discrimination ... the burdens of proof outlined in *McDonnell Douglas* need not apply." *Grant v. Hazelett Strip–Casting Corp.,* 880 F.2d 1564, 1568 (2d Cir.1989) (citation omitted). Indeed, where direct proof of discrimination is available, the Second Circuit has held that there is "no reason to 'adhere stubbornly to [*McDonnell Douglas*] when common sense dictates the same result on the basis of alternative formulae.' " *Id.* (quoting *Grant v. Bethlehem Steel Corp.,* 635 F.2d 1007, 1014 (2d Cir.1980)). The Supreme Court announced the formula for assessing Title VII claims involving direct evidence in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). Whether Plaintiff's failure to hire claim should be addressed under the *McDonnell Douglas* framework or the *Price Waterhouse* framework, however, is an issue that the Court need not resolve in order to address the instant motion, because, as explained below, Defendant would not be entitled to summary judgment under either test.

merely to create doubt that the defendant's stated reason was the real reason for discharging him. He must also put forth "evidence that would permit a rational factfinder to infer that the discharge was actually motivated, in whole or in part, by discrimination" on the basis of his race. *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 561 (2d Cir.1997).

### C. Section 1981 Standard

 Section 1981 provides that "all persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens...." 42 U.S.C. § 1981(a). This provision "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Patterson v. County of Oneida*, 375 F.3d 206, 224 (2d Cir.2004) (citing *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 68–69 (2d Cir. 2000)). The Second Circuit has held that § 1981 "is applicable to a plaintiff complaining of discrimination during an employment period of probation." *Id.* (citing *Grillo v. N.Y. City Transit Auth.*, 291 F.3d 231, 233–35 (2d Cir.2002) (*per curiam*)). Moreover, as Defendants acknowledge, an employment discrimination claim brought under § 1981 contains the same elements and is subject to the same legal standard as one brought under Title VII. *See, e.g., Choudhury v. Polytechnic Inst. of N.Y.*, 735 F.2d 38, 44 (2d Cir.1984) ("We have previously indicated that the same elements constitute a claim for employment discrimination under § 1981 as under Title VII.") (citing *Hudson v. Int'l Bus. Machs. Corp.*, 620 F.2d 351, 354 (2d Cir.1980)).

### D. Fourteenth Amendment standard (substantive due process)

 Although the Complaint does not specify the legal theory underlying its invocation of the Fourteenth Amendment, the sole basis on which Plaintiff has defended his Fourteenth Amendment "claim" is under a "substantive due process" theory. To sustain a "substantive due process" claim, a plaintiff must demonstrate "governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Velez v. Levy*, 401 F.3d 75, 93 (2d Cir.2005) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). Such conduct has been held to include "'malicious and sadistic' abuses of power by government officials, intended to 'oppress or to cause injury' and designed for no legitimate government purpose...." *Id.* at 94 (quoting *Lewis*, 523 U.S. at 845–46, 118 S.Ct. 1708).

 A "substantive due process" claim will be dismissed, however, "where a specific constitutional provision prohibits [the] government action" at issue. *Id.* at 94. In such cases, "plaintiffs seeking redress for that prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due process." *Id.; see also Kia P. v. McIntyre*, 235 F.3d 749, 757–58 (2d Cir.2000) ("'Where another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process.'") (quoting *Conn v. Gabbert*, 526 U.S. 286, 293, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999)) (internal quotes and citations omitted).

### DISCUSSION

### A. Plaintiff's Title VII claim

 Plaintiff has presented direct evidence that racial discrimination played a part in Defendants' decision not to hire him for the Assistant Principal position, as well as ample evidence to establish an

inference of discrimination with respect to his subsequent termination. Significantly, Plaintiff avers that, during numerous conversations with Principal Brown, he was told, *inter alia,* (1) that the school would not hire Plaintiff as Assistant Principal because the district was "not ready" to hire an African–American for that position; (2) that Plaintiff and his fellow Dean of Students, Farb, were hired because Superintendent Weiss wanted to have "one African American Dean of Students and one Caucasian Dean of Students;" (3) that he was "directed" to hire Linda Anthony as Assistant Principal because the "district and [the] town would not go for three black administrators running the school;" and (4) that, according to his understanding, Superintendent Weiss wanted the racial composition of the school's administration to reflect that of the Baldwin community. Furthermore, Plaintiff alleges that, a few months prior to his termination, Principal Brown (1) warned Plaintiff that he, as an African–American school administrator, had to be "twice as good" as the white administrators; and (2) admonished him to "step up [his] game" and to get off of "CPT."

If Plaintiff can prove that Principal Brown and Superintendent Weiss made the racially discriminatory comments that Plaintiff attributes to them, a jury could reasonably find that racial discrimination played a role in Defendants' hiring and firing decisions in this case. Although Defendants argue that they had legitimate, nondiscriminatory reasons for their employment decisions, there remain significant factual issues requiring a trial in this case. As such, even under the *McDonnell Douglas* burden-shifting framework, Plaintiff has adduced both sufficient facts to establish a *prima facie* showing of discrimination *and* evidence from which a jury could conclude that Defendants' proffered reasons for their adverse employment decisions are merely pretextual.

Likewise unavailing is Defendants' argument that the involvement of Superintendent Weiss and Principal Brown in the decision to hire Plaintiff as Dean of Students is inconsistent with a finding of invidious discrimination in their decision to terminate Plaintiff. First, of the three cases Defendants cite in support of this so-called "same actor" defense, one of them found the defense inapplicable, *Jetter v. Knothe Corp.,* 324 F.3d 73, 76 (2d Cir. 2003), and the other two are readily distinguishable on their facts.[3] In any event, the "same actor" defense is but one factor for a district court to consider in assessing whether a Title VII plaintiff's evidence is sufficient to establish an inference of discrimination. Having considered this factor along with Plaintiff's evidence of discrimination, the Court readily concludes that Plaintiff has presented enough evidence to warrant a trial.[4] In light of the facts of

---

**3.** For example, in *Schnabel v. Abramson,* 232 F.3d 83 (2d Cir.2000), the Second Circuit's discussion of the "same actor" defense was immediately preceded by its observation that the plaintiff had "failed to offer any evidence that he was subjected to any age-related comments or criticisms on the job." *Id.* at 91. Here, by contrast, Plaintiff has presented evidence that he was subjected to numerous race-related comments and criticisms, such as Principal Brown's comments that Plaintiff needed to be "twice as good" as white administrators and needed to get off of "CPT." In the other case upon which Defendants rely, *Anderson v. Hertz Corp.,* 507 F.Supp.2d 320

(S.D.N.Y.2007), the district court relied on the fact that the plaintiff offered "no evidence of racial remarks by ... the two managers most directly involved in the hiring and firing of the Plaintiff." *Id.* at 328. Here, by contrast, Plaintiff offers substantial evidence of racial remarks by two senior administration officials—Principal Brown and Superintendent Weiss—both of whom were directly involved in the employment decisions relating to Plaintiff.

**4.** Indeed, numerous district courts have reached the same conclusion when faced with evidence more powerful than that which was

this case, Defendants' "same actor" argument is far better left for the jury to consider. Defendants' motion for summary judgment as to Plaintiff's Title VII claim is therefore DENIED.

## B. Plaintiff's § 1981 claim [5]

■ As the Second Circuit has held, "[m]ost of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981...." *Patterson*, 375 F.3d at 225 (citing *Whidbee*, 223 F.3d at 69). While there are "several significant differences" between the standards applicable to Title VII claims and those applicable to § 1981 claims, *id.*, only one is relevant in this case: "when the defendant sued for discrimination under § 1981 or § 1983 is a municipality ... the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom." *Id.* at 226 (citations omitted). As the Second Circuit has explained:

> To show a policy, custom, or practice, the plaintiff need not identify an express

rule or regulation. It is sufficient to show, for example, that a discriminatory practice of municipal officials was so persistent or widespread as to constitute a custom or usage with the force of law, or that a discriminatory practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials.

*Id.* (internal citations and quotations omitted).

■ A municipality cannot be subjected to § 1983 liability for the actions of its agents under a theory of *respondeat superior*. *Jett*, 491 U.S. at 738, 109 S.Ct. 2702. Instead, a municipality can be held liable for a discrete act taken by a municipal employee only where the employee possesses final policymaking authority in the area in which the action was taken. *Id.* at 737, 109 S.Ct. 2702. Moreover, "'whether a particular official has final policymaking authority is a question of *state law.*'" *Id.* (quoting *St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)) (emphasis in original). Apart from their bald assertion that "[t]here is no evidence in the record of a discriminatory municipal policy or custom," Defendants in

---

recounted in the decisions relying on the so-called "same actor" defense. *See, e.g., Betances v. Prestige Decorating & Wallcovering, Inc.*, No. 05 Civ. 4485(NRB), 2006 U.S. Dist. LEXIS 19029, at *9–10, 2006 WL 963877, at *3 (S.D.N.Y. Apr. 12, 2006); *Douglas v. M. Swift & Sons, Inc.*, 371 F.Supp.2d 137, 144 (D.Conn.2005); *Sklaver v. Casso–Solar Corp.*, No. 02 Civ. 9928(WCC), 2004 U.S. Dist. LEXIS 24934, at *17–21, 2004 WL 1381264, at *5–6 (S.D.N.Y. May 13, 2004).

5. As an initial matter, the Court notes that, although Plaintiff's Complaint references both § 1981 and the Fourteenth Amendment, it does not invoke 42 U.S.C. § 1983. *See Patterson*, 375 F.3d at 225 (holding that "'the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units ....'")

(quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989)); *Pauk v. Bd. of Trs. of the City Univ. of N.Y.*, 654 F.2d 856, 864 (2d Cir.1981) ("when § 1983 provides a remedy, an implied cause of action grounded on the Constitution is not available.") (citing *Turpin v. Mailet*, 591 F.2d 426 (2d Cir.1979) (*en banc*)). Nevertheless, because Defendants do not object and because this pleading defect could easily be cured by a minor amendment to the Complaint, the Court will construe Plaintiff's § 1981 and Fourteenth Amendment claims as being brought pursuant to § 1983. *See Rehman v. State Univ. of N.Y.*, 596 F.Supp.2d 643, 654 (E.D.N.Y.2009) ("... [T]he plaintiff does not have an independent § 1981 claim against any of the defendants and the Court will construe the plaintiff's § 1981 claims as brought pursuant to § 1983.").

no way address whether the actors involved in this case—including Superintendent Weiss and Principal Brown—had final policymaking authority in the areas of school administrator hiring and firing. Defendants seemingly ignore the fact that the Supreme Court in *Jett* confronted the precise issue presented in this case, *i.e.*, when a school board can be held liable under § 1981 for employment-related actions taken by its principal and superintendent. *Id.*

Having failed to address the question of whether the actors in this case possessed final policymaking authority for purposes of municipal liability under *Jett*, Defendants have not established their entitlement to summary judgment on this basis. The only other manner in which Defendants address Plaintiff's § 1981 claim is to repeat their arguments pertaining to Plaintiff's Title VII claim. Those arguments fail for the reasons stated above. Accordingly, Defendants' motion for summary judgment as to Plaintiff's § 1981 claim is DENIED.

### C. *Plaintiff's Fourteenth Amendment claim (substantive due process)*

 Plaintiff having now disclosed, for the first time, that his Fourteenth Amendment claim is grounded in "substantive due process," the Court finds that Defendants are entitled to summary judgment in light of the Second Circuit's holding in *Velez*. What is allegedly conscience-shocking about Defendants' conduct—discriminating against Plaintiff on the basis of his race—is their intent to violate Plaintiff's Equal Protection rights.[6] "In other words, what would serve to raise [Defendants'] actions beyond the wrongful to the unconscionable and shocking are facts which, if proven, would constitute, in themselves, [a] specific constitutional violation [ ]." *Velez*, 401 F.3d at 94. As the Second Circuit explained, "where a specific constitutional provision prohibits government action, plaintiffs seeking redress for that prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due process." *Id.*[7] As such, Plaintiff's "substantive due process" cannot stand and Defendants' motion for summary judgment on this claim is GRANTED.

### D. *Plaintiff's request for punitive damages*

 Defendants argue that "[i]t is well-settled that a municipality may not be liable for punitive damages," and Plaintiff does not contest that argument. Indeed, the Supreme Court has held that municipalities are immune from punitive damages except where expressly authorized by statute. *See, e.g., City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 259–63, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). Title VII, § 1981, and § 1983 do not provide for punitive damages against municipalities, leaving only the question of whether a school district and its board of education are municipal entities for purposes of immunity from punitive damages. Although neither the Supreme Court nor the Second

---

6. *Compare Velez*, 401 F.3d at 94 ("What is allegedly shocking about what the defendants did is ... their intent to violate plaintiff's [First Amendment and procedural due process rights].").

7. Moreover, under the "extremely high standard" used to evaluate substantive due process claims, the Court concludes that the acts alleged in this case, and the inferences favorable to Plaintiff to be drawn from those acts, cannot sustain such a claim. *See Hepburn v. City of Torrington*, No. 3:02CV1252(MRK), 2004 U.S. Dist. LEXIS 15163, at *12, 2004 WL 1771590, at *4 (D.Conn. Aug. 4, 2004). Plaintiff, like the plaintiff in *Hepburn*, provides no authority for the proposition that the creation of a hostile work environment can be considered "conscience-shocking," and the facts in this case, like those in *Hepburn*, do not rise to that level in any event. *Id.*

Circuit has answered that question directly,[8] this Court concurs with the many district courts that have all reached a single conclusion on the question—school districts and boards of education are municipal entities immune from punitive damages under Title VII, § 1981, and § 1983.[9]

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in part and DENIED in part. Plaintiff's Fourteenth Amendment (substantive due process) claim is DISMISSED, together with his request for punitive damages. As to Plaintiff's Title VII and § 1981 claims, however, Defendants' summary judgment motion is DENIED and those claims will proceed toward trial. The parties are referred to the assigned Magistrate Judge, the Honorable E. Thomas Boyle, for purposes of preparing a Joint

**8.** *But see Jett,* 491 U.S. at 710, 109 S.Ct. 2702 (treating a school district as a municipality for purposes of § 1983 liability).

**9.** *See Godfrey v. Katy Indep. Sch. Dist.,* No. H–08–2433, 2009 WL 103592, at *1, 2009 U.S. Dist. LEXIS 2037, at *3 (S.D.Tex. Jan. 13, 2009); *Scalise v. Parkway W. Career & Tech. Ctr.,* No. 2:08–cv–709, 2008 WL 3993890, at *1, 2008 U.S. Dist. LEXIS 64787, at *3 (W.D.Pa. Aug. 25, 2008); *Graham v. Ambridge Area Sch. Dist.,* No. 07–1640, 2008 WL 1994861, at *2, 2008 U.S. Dist. LEXIS 37261, at *5 (W.D.Pa. May 5, 2008); *Brown v. Unified Sch. Dist. No. 500, Kansas City, KS,* 338 F.Supp.2d 1229, 1231 (D.Kan.2004); *Wood v. Sophie Davis Sch.,* No. 02 Civ. 7781(HB), 2003 WL 21507579, at *4, 2003 U.S. Dist. LEXIS 11112, at *14 (S.D.N.Y. June 30, 2003); *Koszola v. Bd. of Educ. of the City of Chicago,* No. 01 C 2711, 2002 WL 398547, at *3, 2002 U.S. Dist. LEXIS 4242, at *8 (N.D.Ill. Mar. 14, 2002); *Taylor v. Phoenixville Sch. Dist.,* 113 F.Supp.2d 770, 777 (E.D.Pa.2000); *Eaglin v. Port Arthur Indep. Sch. Dist.,* No. 1:99–CV–109, 2000 WL 531801, at *6–7, 2000 U.S. Dist. LEXIS 6103, at *20–21 (E.D.Tex. Mar. 15, 2000); *Flot v. Orleans Parish Sch. Bd.,* No. 96–3661, 1998 WL 915864, at *13–14, 1998 U.S. Dist. LEXIS

Pretrial Order and addressing any other pretrial issues requiring Judge Boyle's attention.

SO ORDERED.

20468, at *39 (E.D.La. Dec. 29, 1998); *Biggs v. State of Fla. Bd. of Regents,* No. 1:96–CV–185–MMP, 1998 WL 344349, at *2, 1998 U.S. Dist. LEXIS 23077, at *6 (N.D. Fla. June 11, 1998); *Crawford v. The Sch. Dist. of Philadelphia,* No. 98–1851, 1998 WL 288288, at *2, 1998 U.S. Dist. LEXIS 8064, at *5 (E.D.Pa. June 3, 1998); *Ettinger v. State Univ. of N.Y. State Coll. of Optometry,* No. 95 Civ. 9893(RWS), 1998 WL 91089, at *7, 1998 U.S. Dist. LEXIS 2289, at *19 (S.D.N.Y. Feb. 26, 1998); *Walton v. Taylor,* No. 5:97–CV–367–BR2, 1997 U.S. Dist. LEXIS 20700, at * 18 (E.D.N.C. Nov. 12, 1997); *Doe v. Londonderry Sch. Dist.,* 970 F.Supp. 64, 76 (D.N.H.1997); *Marcus v. St. Tammany Parish Sch. Bd.,* No. 95–3140, 1996 U.S. Dist. LEXIS 13321, at *8 (E.D.La. Sept. 10, 1996); *Newsom v. Xenia City Sch. Dist. Bd. of Educ.,* No. C–3–95–173, 1996 WL 1089865, at *13, 1996 U.S. Dist. LEXIS 20267, at *41 (S.D.Ohio Mar. 25, 1996); *Garrett v. Clarke County Bd. of Educ.,* 857 F.Supp. 949 (S.D.Ala.1994).